UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MIRA WACHSTOCK, on behalf of herself and others similarly situated,

                Plaintiff,

-against-

VERDE ENERGY USA, INC.

                Defendant.

No. 14-cv-4082

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Mira Wachstock ("Plaintiff"), individually and on behalf of all others similarly situated, through counsel, and for her complaint against defendant Verde Energy USA, Inc. ("Defendant"), states and alleges as follows:

## NATURE OF THE ACTION

1. This action seeks statutory damages and injunctive relief pursuant to the Telephone Consumer Protection Act, codified at 47 U.S.C. § 227, in connection with unsolicited telemarketing calls made by or on behalf of Defendant to Plaintiff and others similarly situated.

## JURISDICTION

2. This Court possess subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the claims asserted herein arise under Federal law and pursuant to 28 U.S.C. § 1332(d) because the amount in controversy is, upon information and belief, in excess of $5 million and there is minimal diversity between Plaintiff and Defendant. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant conducts business in this district and acts alleged herein occurred within this district.

## PARTIES

3. Plaintiff Mira Wachstock ("Plaintiff") is an individual residing in Queens, New York.

4. Verde Energy USA, Inc. ("Defendant") is a corporation that conducts business in the State of New York.

## TELEPHONE CONSUMER PROTECTION ACT

5. The Telephone Consumer Protection Act is codified at 47 U.S.C. § 227 (the "Telephone Consumer Protection Act").

6. The Telephone Consumer Protection Act prohibits, *inter alia*, calls made to any wireless phone using an automated telephone dialing system:

> It shall be unlawful for any person within the United States…to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call

(47 U.S.C. § 227(b)(1).)

7. The Telephone Consumer Protection Act, to compel compliance with its prohibitions and the regulations prescribed under it, provides that:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—
>
> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
> (C) both such actions.

2

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

(47 U.S.C. § 227(b)(3).)

8. Under the Telephone Consumer Protection Act, as interpreted by the Federal Communications Commission ("FCC"), a company on whose behalf a telephone solicitation is made bears ultimate responsibility for any violations of the Telephone Consumer Protection Act. *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum and Order, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995).

9. Calls placed by a third party on behalf of that company are treated as if the company itself placed the call. *See* Rules and Regulations Implementing the Telephone Consumer Protection Act; Request of State Farm Mutual Automatable Insurance Company for Clarification and Declaratory Ruling, Declaratory Ruling, 20 FCC Rcd. 13664, 13667, ¶ 7 (2005).

10. The phone calls at issue in this case were made by and/or for the benefit of Defendant. Because these calls were made by or "on behalf" of Defendant, Defendant bears the responsibility for any violations of the TCPA, even if Defendant did not directly place the calls. Defendant is also responsible for the illegal actions of their agents and are also responsible for any illegal actions conducted in the course of any joint venture with any third party.

11. Whenever this Class Action Complaint refers to any act or acts of Defendant, the reference shall also be deemed to mean the directors, officers, employees, affiliates, or agents of the Defendant who authorized such act or acts while actively engaged in the management, direction or control of the affairs of Defendant, and each of them, and by persons who are

3

parents or alter egos of Defendant while acting within the scope of their agency, affiliation or employment, jointly or severally. All acts attributed to Defendant in this Class Action Complaint shall also be deemed to refer to acts by any agent, associate, affiliate, subsidiary or joint venturer of Defendant or any act taken by any person, as defined in 47 U.S.C. § 153, on behalf of or for the benefit of Defendant.

12. Finally, the FCC has interpreted an automatic telephone dialing system as follows:

> Under the TCPA, the term "automatic telephone dialing system" or "autodialer" is defined as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." … § 227(a)(1). *The Commission has emphasized that this definition covers any equipment that has the specified capacity to generate numbers and dial them without human intervention <u>regardless</u> of whether the numbers called are randomly or sequentially generated or come from calling lists.* See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14092, para. 133 (2003) (2003 TCPA Order).
>
> The Commission has, for example, concluded that the scope of that definition encompasses "hardware [that], when paired with certain software, *has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers*," in light of, among other things, its conclusion that "the purpose of the requirement that equipment have the 'capacity to store or produce telephone numbers to be called' is to ensure that the prohibition on autodialed calls not be circumvented." *Id*. at 14091-93, paras. 131, 133.

*Soundbite TCPA Ruling*, 15 FCC Rcd. 15391 at ¶ 2, n.5 (emphasis added.) And the FCC has also made clear that it includes predictive dialers within its definition of automatic telephone dialing system; as recently explained in *Echevvaria v. Diversified Consultants, Inc.*:

> Recognizing the proliferation of predictive dialer use in telemarketing, the FCC in 2002 had invited comments on whether predictive dialers fall within the restrictions placed on ATDS's. *See 2003 Report* at 14090 ¶ 129. A predictive dialer is defined as "equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in

4

> predicting when a sales agent will be available to take calls." *2003 Report* at 14091 ¶ 131. Moreover, "[t]he hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, *or from a database of numbers." 2003 Report* at 14091 ¶ 131 (emphasis added). Although the sophistication of these devices exceeds that of dialing equipment previously used to arbitrarily generate ten-digit numbers, the FCC acknowledged that the "basic function" remained the same—namely, "the *capacity* to dial [phone] numbers [en masse] without human intervention" or oversight. *2003 Report* at 14092 ¶ 132.
>
> In evaluating whether a predictive dialer is an ATDS under the TCPA, the FCC focused on Congress's intent to prevent automated phone calls to telephone numbers "for which the consumer is charged for the call," such as cell phones. *2003 Report* at 14092 ¶ 133. Because the purpose of predictive dialers is to do precisely that, the FCC concluded that excluding them from the definition of automatic telephone dialing equipment would be an exception that swallows the rule. *2003 Report* at 14092 ¶ 133. The protected class of phone numbers, including cell phone numbers, would remain vulnerable to relentless harassment by telemarketers by virtue of the hollow distinction that their number was dialed from a list rather than randomly generated. *Id.* Accordingly, the FCC ruled that "a predictive dialer falls within the meaning and statutory definition of 'automated telephone dialing equipment' and the intent of Congress." *2003 Report* at 14093 ¶ 133. In 2008, the FCC issued a Declaratory Ruling reaffirming that "a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling,* 23 F.C.C. Rcd. 559, 556 ¶ 12, 2008 WL 65485 (F.C.C. Jan.4, 2008) (*"2008 Declaratory Ruling"* ).

*Echevvaria v. Diversified Consultants, Inc.*, No. 13-cv-4980, 2014 WL 929275 (S.D.N.Y. Feb. 28, 2014).

## FACTUAL ALLEGATIONS
## REGARDING CALLS FROM DEFENDANT TO PLAINTIFF

13.  Plaintiff never provided permission to Defendant to call her wireless telephone number nor to contact her regarding any goods or services offered by Defendant.

14.  Plaintiff received eight phone calls to her wireless phone from 718-355-9952 between June 9, 2014 and June 20, 2014. These calls were received by Plaintiff on June 9, 2014

5

at 1:25 p.m., June 9, 2014 at 3:28 p.m., June 10, 2014 at 9:38 a.m., June 10, 2014 at 11:43 a.m., June 10, 2014 at 1:45 p.m., June 19 at 1:56 p.m., June 20, 2014 at 4:08 p.m. and June 20, 2014 at 6:28 p.m.

15. Plaintiff answered the call received from 718-355-9952 on June 20, 2014 at 4:06 p.m. and said "hello" several times but there was no response. Plaintiff then waited for someone to answer but there was still no answer and so Plaintiff eventually ended the call.

16. Plaintiff also answered the call received from 718-355-9952 on June 20, 2014 at 6:28 p.m. Upon answering this call, Plaintiff said "hello" three times and there was no response. After saying "hello" three times someone finally came onto the call at the other end and asked for Plaintiff by name and said he was calling from Verde Energy and that Verde Energy could save Plaintiff money on her energy bill.

17. Plaintiff called the phone number 718-355-9952 which answers with a prerecorded message as follows: "Thank you for calling Verde Energy, we were trying to reach you for marketing purposes."

18. Multiple calls were placed by or on behalf of Defendant to Plaintiff's wireless phone. These calls were placed without Plaintiff's authorization. These calls were for marketing purposes intended to sell goods or services offered by Defendant to Plaintiff.

19. These calls were also made using an automated telephone dialing system as indicated by the frequency of the calls, the prerecorded message used when calling back 718-355-9952, and the delay in the time between Plaintiff answering the phone call and someone on the other end coming onto the line to speak with Plaintiff. This demonstrates that a predictive dialer was used and that these calls were automatically placed by a phone system to Plaintiff and that the phone system would only connect the call to a live representative after someone actually

6

answered the call – here, Plaintiff. Once the phone system determined that Plaintiff had actually answered the call, it then automatically routed the call to what it predicted would be the next available agent who would then speak with Plaintiff.

20. The call placed from 718-355-9952 on June 20, 2014 at 4:06 p.m. demonstrates Defendant used an automatic telephone dialing system since after Plaintiff answered this call and said "hello" several times there was no response on the other end. This demonstrates the call was placed by a predictive dialer which did not have any live agents to which to transfer the call and hence Plaintiff was essentially left on hold while the telephone system was waiting for a live agent to become available to take the call. This is also accounts for the delay that occurred on the call on June 20, 2104 at 6:28 but this time the telephone system's predictive feature was able to correctly predict an agent would be available to speak with Plaintiff, albeit a while after Plaintiff answered the call rather than immediately.

21. The fact that nobody was available to speak with Plaintiff immediately upon her answering these calls also evidences that the calls were not dialed by a human being but rather dialed automatically by the phone system from a list of phone numbers that included Plaintiff's wireless phone number.

22. The foregoing coupled with the functions typical of predictive dialers used by telemarketers such as Defendant indicate the phone system that called Plaintiff has, upon information and belief, the capacity to: generate numbers and dial them without human intervention; generate numbers from calling lists and dial them without human intervention; generate numbers randomly and dial them without human intervention; generate numbers sequentially and dial them without human intervention; store numbers and dial those numbers from a database of numbers; store numbers and dial those numbers at random; store numbers and

7

dial those numbers sequentially; produce numbers and dial those numbers from a database of numbers; produce numbers and dial those numbers at random; produce numbers and dial those numbers sequentially; produce telephone numbers to be called, using a sequential number generator and to dial such numbers; produce telephone numbers to be called, using a sequential number generator and to dial such numbers; store telephone numbers to be called, using a random number generator and to dial such numbers; and store telephone numbers to be called, using a random number generator and to dial such numbers.

23. The predictive dialer phone system that called Plaintiff eight times as alleged above is an automatic telephone dialing system.

24. Plaintiff has also reviewed numerous online forums containing posts complaining about Defendant's harassing telemarketing practices and expressing frustrations nothing appears to deter Defendant's illegal and harassing telemarketing practices.

## CLASS ACTION ALLEGATIONS

25. Plaintiff brings this action as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure for all claims.

26. Plaintiff brings this class action on behalf of herself and all others persons within the United States who within the four year period prior to filing this Class Action Complaint (the "Class Period") received a telemarketing call by or on behalf of Defendant or by their agents to any wireless phone using an automatic telephone dialing system.  Excluded from the class definition are (i) Defendant or any of its employees or agents, or any of their family members, or (ii) any person from whom Defendant have in their records express written consent signed by such person permitting Defendant to call that person's wireless phone to telemarket goods or services offered by Defendant using an automatic telephone dialing system.  (The "Class").

8

27. The members of the Class are so numerous that joinder of all Class members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, this information is easily ascertainable through discovery of Defendant's records, and Plaintiff believes that there are likely hundreds, if not more, individuals in the Class.

28. Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

> a. Whether calls were made to wireless phones using an automatic telephone dialing system by or on behalf of Defendant during the Class Period to sell goods or services offered by Defendant.
>
> b. Whether Defendant should be enjoined from making such calls.

29. Plaintiff's claim is typical of the claims of the other members of the Class, because the Plaintiff and all members of the Class were called on their wireless phones by or on behalf of Defendant seeking to market to them goods or services offered by Defendant without their prior express written signed consent.

30. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class and has retained counsel competent and experienced in class action litigation. The interests of Plaintiff are coincident with and not antagonistic to the interests of the other members of the Class.

31. Class certification of Plaintiff's claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendant. In addition, Class certification of Plaintiff's claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on

9

grounds generally applicable to the Class, making appropriate injunctive relief with respect to Plaintiff and the Class as a whole. The members of the Class are entitled to injunctive relief to remedy Defendant's ongoing statutory violations.

32. Class certification of Plaintiff's claims is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly adjudicating the controversy. Moreover, statutory damages for any one individual plaintiff are not sufficient to induce individual class members to control the prosecution of separate actions and management of these claims because a single class action is more desirable and creates fewer difficulties than that presented by individuals' claims by each class member.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF THE
### TELEPHONE CONSUMER PROTECTION ACT
33. **47 U.S.C. § 227; 47 C.F.R. § 64.1200**

34. Plaintiff hereby repeats and re-alleges the allegations contained in Paragraphs 1 through 32 as if fully set forth herein.

35. Calls were made by or on behalf of Defendant using an automatic telephone dialing system to Plaintiff and other Class member's wireless phones marketing goods or services offered by Defendant.

36. Calls were made by or on behalf of Defendant where a live sales representative was not available to speak with the person answering the call and in which two seconds after the called person's completed greeting the phone system did not provide a prerecorded identification and opt-out message that was limited to disclosing that the call was for "telemarketing purposes"

and did not state the name of the business, entity, or individual on whose behalf the call was placed, and a telephone number for such business, entity, or individual that permits the called person to make a do-not-call request during regular business hours for the duration of the telemarketing campaign, and also did not provide an automated, interactive voice- and/or key press-activated opt-out mechanism that enables the called person to make a do-not-call request prior to terminating the call, including brief explanatory instructions on how to use such mechanism.

37. Plaintiff and other Class members are entitled to an award of $500 for each violation of 47 U.S.C. § 227 and/or 47 C.F.R. § 64.1200 as well as injunctive relief prohibiting such conduct in the future.

## COUNT II
## KNOWING AND/OR WILLFUL VIOLATIONS OF THE
## TELEPHONE CONSUMER PROTECTION ACT
## 47 U.S.C. § 227; 47 C.F.R. § 64.1200

38. Plaintiff hereby repeats and re-alleges the allegations contained in Paragraphs 1 through 36 as if fully set forth herein.

39. Calls were knowingly and/or willfully made by or on behalf of Defendant using an automatic telephone dialing system to Plaintiff and other Class member's wireless phones marketing goods or services offered by Defendant.

40. Calls were knowingly and/or willfully made by or on behalf of Defendant where a live sales representative was not available to speak with the person answering the call and in which two seconds after the called person's completed greeting the phone system did not provide a prerecorded identification and opt-out message that was limited to disclosing that the call was for "telemarketing purposes" and did not state the name of the business, entity, or individual on whose behalf the call was placed, and a telephone number for such business, entity, or individual

11

that permits the called person to make a do-not-call request during regular business hours for the duration of the telemarketing campaign, and also did not provide an automated, interactive voice- and/or key press-activated opt-out mechanism that enables the called person to make a do-not-call request prior to terminating the call, including brief explanatory instructions on how to use such mechanism.

41.   Plaintiff and other Class members are entitled to an award of $1,500 for each violation of 47 U.S.C. § 227 or 47 C.F.R. § 64.1200 as well as injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment granting the following relief:

A. As to Count I:

   a. A common fund comprising an award of $500 in statutory damages for each of the following:

      i. each and every call made using an automatic telephone dialing system to a wireless phone number;

      ii. each and every call made using a phone system not programmed to provide the information required by 47 C.F.R. § 64.1200(a)(7)(i) within two seconds of the called person answering the call if a live representative was not available; and

      iii. each and every other violation of any other provision of 47 U.S.C. § 227 and/or 47 C.F.R. § 64.1200.

   b. Injunctive relief prohibiting Defendant from making any calls or from any conduct directed at having any other person or entity make any calls:

      i. using an automatic telephone dialing system to call any wireless phone number without first obtaining the "prior express written consent" of the called party as required by 47 C.F.R. § 64.1200;

      ii. unless the phone system making the call is programmed to provide the information required by 47 C.F.R. § 64.1200(a)(7)(i) within two seconds of the called person answering the call if a live representative was not available,; and

      iii. which otherwise violate 47 U.S.C. § 227 and/or 47 C.F.R. § 64.1200.

B. As to Count II:

   a. A common fund comprising an award of $1,500 in statutory damages for each of the following:

      i. each and every call made knowingly and/or willfully to a wireless phone number using an automatic telephone dialing system;

      ii. each and every call made knowingly and/or willfully using a phone system not programmed to provide the information required by 47 C.F.R. § 64.1200(a)(7)(i) within two seconds of the called person answering the call if a live representative was not available,; and

      iii. each and every other violation of any other provision of 47 U.S.C. § 227 and/or 47 C.F.R. § 64.1200.

   b. Injunctive relief prohibiting Defendant from making any calls or from any conduct directed at having any other person or entity make any calls:

      i. using an automatic telephone dialing system to call any wireless phone number without first obtaining the "prior express written consent" of the called party as required by 47 C.F.R. § 64.1200;

      ii. unless the phone system making the call is programmed to provide the information required by 47 C.F.R. § 64.1200(a)(7)(i) within two seconds of the called person answering the call if a live representative was not available; and

      iii. which otherwise violate 47 U.S.C. § 227 and/or 47 C.F.R. § 64.1200.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all claims so triable.

Dated:   July 1, 2014

                                              Respectfully submitted,

                                              Aaron Siri
                                              SIRI & GLIMSTAD LLP
                                              120 East 31st Street
                                              New York, New York 10016
                                              Tel: (212) 532-1091

                                              *Attorneys for Plaintiff*